May it please the court, Robert Lundman representing the United States Department of Agriculture and the Forest Service. I'd like to reserve five minutes for rebuttal. To be considered a prevailing party under EJA, a plaintiff must have been awarded some relief by a court, as the Supreme Court has held in Buchanan and Hewitt. Citizens for Better Forestry, or CBF, is not a prevailing party here because it obtained no relief in this litigation. The district court did not issue any relief. No judgment was entered, declaratory or otherwise, in CBF's favor. No injunction, permanent or preliminary was entered in CBF's favor, and there was no consent decree. CBF, therefore, failed to obtain, quoting from Buchanan, the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees. This court's opinion on standing and ripeness in CBF's prior appeal does not provide the requisite relief. In deciding standing, this court stated that the agency's preparation of the environmental assessment without any public involvement violated NEPA regulations. That statement, however, was in an order that held only that CBF had standing and that its procedural claims were ripe. The order allowed CBF to continue to pursue its claims, but it did not award CBF any relief. Well, let me stop you there. This has an interesting interplay with the case we just had. To what extent was there anything left with regard to that particular issue? I mean, this isn't, let's draw a comparison. Qualified immunity cases, you've got to prove a couple different things. You've got to prove the violation of constitutional rights, and then you have to prove the second part. They're not entitled to qualified immunity. And it's clear that winning on one doesn't give you relief that entitles you to attorney's fees because you've got issue number two yet to go. Now, in our case, you've got an array of issues. But with regard to what the prior Ninth Circuit panel opinion said in terms of compliance with NEPA, was there anything left to be contested? Was there anything left to be adjudicated? If the district court wound up getting it back because the rule, I mean, if the whole litigation had been short-circuited by what the department did, was there anything left for anybody to figure out with regard to that cause of action? There was. Before relief can be entered, before a declaratory judgment can be entered, the court not only has to find the violation of law, but has to go through an equitable analysis about whether declaratory relief is justified. And this court in National Wildlife Federation v. ESPE explained that that equitable considerations are necessary, both for the determination of an injunctive relief and the determination of whether a declaratory judgment is proper or not. So on remand. What does that mean in real terms with regard to this case? I mean, had gone back to the district court, what was there for the district court to weigh with regard to whether there should be declaratory relief on the issue of compliance with NEPA? Well, that was never developed because the case was stayed, but assuming that had occurred, that the summary judgment motion that CBF eventually filed had proceeded to be adjudicated, then the government would have been entitled to put forth defenses saying that, you know, we don't need relief here because, for example, a new rule is about to come down, we don't need the court to set aside the prior rule. There was a series of interim rules here the agency had issued saying which prior forest service rules applied in which circumstances, and the government, among other things, could have argued that we don't need a court right now to set aside to enter a declaration or an injunction, because the government right now is working on this very issue and ultimately did issue a new rule that led to the stipulation of dismissal here. I mean, I understand that the catalyst theory doesn't work, and I understand the reasoning behind that, but if the only reason for the district court not to enter a declaratory judgment with regard to this issue is that the department's rolling over and paying debt on that issue, is there really anything, in light of the prior Ninth Circuit panel decision, that begins to make that prior decision look itself like a declaratory judgment, because after it's coming out, there's nothing else to be said with regard to the NEPA issue. It's a little more complicated than that just in terms of what happened here. When the Ninth Circuit issued its order in 2003, by that point the agency had already released a draft new rule. So it wasn't that this order was the catalyst, putting aside the problems of the catalyst theory that's been rejected in Buchanan, that the agency was already working on this problem and had released a draft rule before the Ninth Circuit even issued its opinion. So the agency was moving ahead on a separate track from what was going on precisely in this litigation. And I think the key question isn't just what we could speculate now about what the agency could have put forth to defend against a declaratory judgment, but that absent that declaratory judgment, there is no relief here on which to base the prevailing party status. And that's what the Supreme Court decided in Hewitt, reiterated in Buchanan. That's what this court's recent case in Poland v. Chertoff stands for, which is the case that identified a violation of law but had vacated the relief awarded by the district court. On the issue of attorney's fees, this court then said, no attorney's fees at this point because there's no prevailing party status, because there's no relief. We remand to the district court, and the district court then can issue nominal damages or other damages or other sorts of relief. But our statement of law is not enough to constitute a declaratory judgment. You need something more formal. This discussion of the prior actions and what wasn't done, doesn't that come close to this catalyst theory of what was the catalyst for all this? And that's discredited as not the basis for finding a final judgment, isn't it? That's right. The catalyst theory is Buchanan resolved that the catalyst theory does not entitle a plaintiff to prevailing party status. And so I'm a little bit with Judge Clifton. There doesn't seem to be much left, but everything that preceded that seems to fall in sort of a catalyst thing. If you're going to stick to the rule, it says you've got to look at the final judgment, the final act. Right. Now, the party stipulated before there was any judgment of any kind. Right. Precipitated by the new rule. Right. Which I take it obviated the complaint or the allegations of the complaint or you would have continued on somewhere. Well, the new rule replaced the rule that had been challenged, and that rule had been both challenged on substantive grounds and procedural grounds. So the challenge was mooted by the new rule. Right. That's the government's position. The stipulation, to be fair, I don't think includes the word moot. It just says the case will be dismissed with prejudice. It was a general dismissal. But what I'm saying is that even if there was something left over, the dismissal doesn't say it was gone. Whatever was up there was gone. Right. The dismissal dismissed the complaint with prejudice, reserving the attorney's fees to be litigated. What do we do with this portion of the opinion which says citizens were deprived of the opportunity to comment on USEA and FONSI on all points in the rulemaking process? This deprivation violated their rights under the regulations implementing NEPA. Now, wouldn't that be something that would have to be presidential for the future? Well, there's two points. Whether it's presidential in this court and in district courts, and whether it's a relief awarded akin to a judgment that can be entitled to prevailing party status. Isn't that a pretty good relief? You've got a precedent that has to be applied in this case and in others. Well, there are lots of circumstances in which a statement of law, and that's what we argue all that is here, is precedential going forward and has an impact in this court. And this came up in the context of an order ruling on, an appeal on the issues of standing and ripeness. And it was not a judgment from the district court that entered some sort of formal relief here. So you can imagine lots of appeals, other standing appeals I'm sure have existed where. But I'm talking about the relief that was obtained before this court for that statement of law that I just read. Seems like that's a pretty significant relief. Well, I think it's a significant statement of law, arguably. And we can argue about what's happened to it since then. But as a statement of law, it may have significance. But it's not relief. It's not a declaration. It's not a judgment, declaratory judgment that they can rely on as. . . It's not just a statement that doesn't affect the people, because it's talking about citizens who are deprived of the opportunity. So it's directed to citizens. Right. It's clearly in the context of what happened in this case. But what never happened in this case was tying that statement of law down to a formal award of relief. Why does it have to be formal? Well, the short answer is it has to be formal because that's what Buchanan says. And that's what the Buchanan Supreme Court case says, that it's not enough just to have a statement of law. And both Buchanan says that. Hewitt says that. This court's case in Poland says a statement of law, regardless of how favorable it might be, is not enough. You need something else. And what you need is the material alteration of the party's legal relationship or, in shorthand, an award of relief. Does our Benton v. Oregon student say exactly what you're saying? I think it does. I think Benton is very supportive of that. Tell me if there's any difference. According to what I understand, Benton says that there was a finding that the plaintiff had proven her constitutional rights had been violated, but that alone was not sufficient to award her an attorney's fee. Is that what you're saying? Your case is exactly like Benton? I'm saying it's like Benton, it's like Hewitt, and it's like Buchanan, in that a statement of law alone is not enough. You need something more formal. And this surely is a formal rule. And sometimes cases, you know, when you apply a formal rule, the equities of a particular case weigh one way or another. But the prevailing party definition in the Supreme Court case in Buchanan makes clear that the formality here matters, and you need more than just a statement of law, even a very favorable one, even one that then is picked up and becomes an important legal point. You need actual relief. Is there a change in the relationship between the parties when they have said this and the parties were obligated to follow that? Well, the short answer is nothing had happened yet that had obligated the Forest Service to follow this. If the remand had gone on the remand to the district court, if CBF's summary judgment motion had gone forward, as I was explaining to Judge Clifton earlier, the government would have been entitled to put forth equitable defenses to entry of judgment, either on the injunction that plaintiffs were seeking or on the declaratory judgment. Short of that next step occurring and the formal relief being awarded, until that happens, and it didn't happen here, we don't have the prevailing party standard satisfied. It seems to, in effect, create a black line rule that says, or a black letter rule that says, either you've got a judgment entered in your favor or you don't. Because if the additional argument I was asking about, well, what's left to talk about, and what you've offered up that I've heard so far is, well, you don't need to enter declaratory relief because we've changed the rule anyway. And to be honest, I'm not out of defense. I mean, that's a reason to say you don't have to take this step, court, because it's all over, but it's not anything that otherwise would prevent the court from saying, well, then the game is over, isn't it? And judgment entered. Right. There could have been nothing to put forth there. I don't know the answer to that, and that wasn't litigated. And we never got to that point because the summary judgment motion was filed, the subsequent motion to lift the stay in the district court was filed, and then the party stipulated. That's why I say, in effect, this is going to gravitate toward a rule that says, either you have a judgment in hand or you don't, because as I look at this, the Ninth Circuit's opinion was about as close as the court of appeals could come to saying X is the winner on this issue. So I ask, well, what is there for the district court to consider with regard to that issue? And is there anything that could be offered up by the government to fend off declaratory relief? And the only thing I've heard so far is, well, you don't need to because we've already withdrawn or we've changed the rule. Well, that's something that may cause the court not to put the judgment in place, but it's not something that otherwise suggests there's anything left to do in the litigation once the court of appeals has spoken. So it may be. I mean, this is sort of what I'm getting to. Are you advocating a rule that says if you don't have judgment in hand that says you win on this issue, you get declaratory relief on this issue or you get this money, that if you don't have judgment in hand, then you can't have an award of attorney's fees? Well, in this case, I think the answer is essentially yes. Unless they got a judgment in hand that took this statement of law from the Ninth Circuit and put it into a formal judgment, they would not get attorney's fees. Now, this court, just so to be clear, in Watson, has held that a preliminary injunction that later becomes moot can entitle one to attorney's fees. It's held that a consent decree, akin to what's discussed in Buchanan, can entitle one to attorney's fees. So this court has carved out other formal material alterations of the party's legal relationships that count. There's no preliminary injunction here. There's no consent decree here. There's nothing that falls into this court's other categories that it's carved out. From the perspective of the court of appeals, okay, if we issue something that specifically directs district court to enter injunction, even a preliminary injunction or enter declaratory relief, then it sounds like maybe there's room to argue attorney's fees should be awarded based on that. But if we simply express, as the court of appeals tends to do, our view on the law and expect the district court to respond accordingly, that's never going to be enough because between the date that the court of appeals comes out with its mandate and the date the district court picks up the file again, one of the other parties may be killed in a plane crash or we may have an earthquake and the building's down and nobody's working on the project anymore. All sorts of things could happen to stop the case from proceeding, and that seems to be enough to prevent an award of attorney's fees, as I hear the government's position. That's right. Those sort of interim events would prevent an award of attorney's fees. I just want to very briefly mention that. I have the time for rebuttal. Okay. Thank you. May it please the court, good morning. My name is Pete Frost. I represent Citizens for Better Forestry in this appeal. I have three points, and I'd like to address some of the questions you're asking of counsel, Judge Clifton. The first point I want to make very clear is that in our view, the panel in the underlying opinion ruled on the merits of a NEPA claim. It was not simply an order related to the jurisdictional questions of standing and relief. And the reason for that, as we explicated in our briefs, is the agency took the position that even if that panel were to reverse the district court on the jurisdictional questions, it was still required to affirm the dismissal of the case because the agency was correct on the merits. And it used about nine pages of its answering brief, arguing the NEPA claim to the underlying panel. At oral argument before that panel, the judges were clearly concerned about how to resolve the NEPA claim. They requested supplemental briefing from the parties as to the meaning of a precedential case called Anderson v. Evans. And the parties filed supplemental briefs as to the NEPA claim. And ultimately, of course, the court ruled that what the agency had done violated citizens' procedural rights under the NEPA regulations and remanded the case to the district court for the consideration of whether to issue injunctive relief. It was an order and opinion of this court. It was followed on the docket by the clerk of this court by the entry of a judgment. The agency did not seek a petition for a panel rehearing or en banc review. It didn't ultimately seek certiorari from the Supreme Court. And the mandate of this court was entered, finalizing our success on the merits of the NEPA claim before that panel. And as you're aware, when it went back to the district court, the agency had stayed implementation of the rule for the time period. But when in the fall of 2004, it made it clear that it was going to go ahead and implement the rule that we had challenged and that the prior panel had held had been promulgated in violation of NEPA, we filed for summary judgment and injunctive relief. And I want to let you know why we did so, because in the government's reply brief, it infers that we thought we hadn't won in the first place. That may be true, but why isn't this just an extension or an argument for the catalyst principle? We're not relying upon the catalyst theory, Your Honor. The agency didn't rescind the regulation that we challenged shortly after this court ruled on the merits. It didn't rescind that regulation until January of 2005. And in fact, it began implementing that regulation in the fall of 2004. So this isn't a case where it was looking in the face of an adverse court opinion and pulled back to avoid fees. This was a case in which there had been a dispositive ruling on the merits of a claim that, again, we moved in the district court for summary judgment. And please, we did so for two reasons. We had existing Endangered Species Act claims that the underlying panel had not resolved because it found the record insufficient to resolve that claim on that claim alone. We also had other claims under the National Environmental Policy Act that had not been resolved by this court. We had claimed that the EA that the agency prepared was deficient and that it was required to prepare an environmental impact statement. So we moved for summary judgment and we moved for injunctive relief from the district court on that. And while that motion was pending, the agency rescinded the rule. So in our view, there was a decision on the merits by the panel in the underlying appeal. And under the existing case law of this court, the only case that I'm aware of that is on point, a declaratory ruling such as that one makes a party prevailing under the Equal Access to Justice Act. That is what Animal Lovers v. Carlucci decides. In this context, I want to stress that the issue of whether a litigant prevails under the Equal Access to Justice Act has to be viewed as a matter of fact. It has to be viewed through the lens of what federal law that litigant alleged has been violated and also, importantly, what Congress has provided as specific relief available to that litigant. As this court is aware, a National Environmental Policy Act claim proceeds under the Administrative Procedure Act. The APA provides a litigant with two kinds of relief. A court may declare an agency's actions unlawful, and if it does so, a court may set aside the agency's actions. And that's what happens customarily in an APA case. And what happened in the underlying appeal here is we obtained the declaration of law available to us and entitled to us under the APA, and the panel remanded the agency's action ought to be set aside back to the district court. This is on all fours with Animal Lovers v. Carlucci, where litigants had challenged the sufficiency of a NEPA analysis. They had lost in the district court, but it went up to the Ninth Circuit. This court issued a declaratory ruling just like the one it issued as an opinion and order in the underlying appeal. It held that the agency had violated NEPA, and it sent the case back to the district court to consider whether to issue injunctive relief. You know, I recently had the honor of appearing before Judge Hugg in a different case, High Sierra Hikers v. Blackwell, the concerned commercial pack stock services in the High Sierra, and that case tracked just like this one. We had lost in the district court. We came up on appeal. This court issued a declaratory ruling in our favor. That ruling was codified in an opinion and order. Judgment was entered by the clerk. Mandate was entered, ultimately. It went back to the district court for the consideration of injunctive relief, and the proceedings in the district court continued. But we moved for fees for the appellate proceeding in that case, because we had had litigation going on for a long time, and we obtained a fee award from this court. There was no question that where the Ninth Circuit addresses an issue on the merits and issues a declaratory ruling, it is a prevailing party under the Equal Access to Justice Act. I do want to address one of the cases the government cites, National Wildlife Federation v. I'm sorry that I've forgotten the Federal Farmers Home Administration is the named defendant in that case. It's a case in which, a Ninth Circuit case in which this court says generally that a district court has the discretion whether to issue declaratory relief and injunctive relief in a case under the APA. And I don't disagree with that proposition. But I do disagree with the proposition that where the Ninth Circuit has made a decision on an issue and sent the case back to the district court, the notion that the district court can revisit whether it was right in the first place on that issue or not apply the appellate court's ruling makes no sense to me. Of course it must apply the appellate court's ruling. Otherwise, all this court is doing is issuing advisory opinions that don't have any finality to them. I also want to make sure, if I may, that the court understands on remand that we made it very clear in our service to the district court that the district court had not sought summary judgment briefs, that this court had ruled on the merits of our NEPA claim. It wasn't that we sought summary judgment to have the district court revisit that question. We were adamant that we had already obtained exactly the ruling to which we were entitled. Now, most of the cases the government cites, such as the one involved in Hewitt v. Helms, in Benton, in Pullen v. Chertoff, these are cases for which fee awards are predicated on a district court awarding money damages in the first place. That's what happened, for example, in Pullen v. Chertoff. In the absence of such a money damage award, courts have held that a party is not prevailing for the purposes of attorney's fees. There's no money damages involved in an action such as this one. There are two routes of relief available to us. We obtained one of them from the NEPA, and we were entitled in the underlying appeal. And from our perspective, we're prevailing parties under the Equal Access to Justice Act, and the district court was correct in making that ruling. I have a problem, I guess, determining what to do in the sense that this is a fee-shifting issue. It has nothing to do with the Constitution, whatever. Some brilliance of legislation did or did not provide for attorney's fees. But then Buckhannon said, well, you know, if you have a fee, you have to pay it. And so the line comes along, and Hensley from the Supreme Court, which are some of the latest, 2001, and it seems to provide some sort of bright line. It may be right, may be wrong, may be good policy, bad policy, but it seems to require a bright line. And what's being argued here by the government is that bright line is no judgment, no fees. And the issue of prevailing on the Constitutional law decision for a party all seem to be subsumed in Buckhannon to a certain degree. And your arguments are well made, but I don't know what to do with Buckhannon. Your Honor, this Court has recognized that what Buckhannon requires is the material alteration in the legal relations of the parties. And the issue presented in this case, from our perspective, is a declaratory ruling of this Court made final in the entry of a judgment on the Constitutional law decision by this Court in the entry of a mandate. Does that constitute a material alteration in the legal relations of the parties? And what was that material alteration? The, when we obtained a declaration from this Court that that agency had violated the law, which allowed us to go to the Court. We have Benton and Arndt said the same thing. There was a Constitutional, they declared there was a Constitutional violation, but no fees. That, if I'm correct, that party was seeking damages in Benton, as was the litigant in Poland v. Chertoff. The nature of what you're seeking then would have relevance to whether you get attorney's fees. Yeah, the nature of the statute that allows an Article III court to hear the case in the first place does have very much relevance in whether you're a prevailing party under the Equal Access to Justice Act. And if I may, after Buckhannon, this Court has held, as I said, that when a party obtains a preliminary injunction, in which that party has succeeded only in proving probable success on the merits, that party is a prevailing party, even if that case goes away because it becomes moot from subsequent events. I guess that could be, I guess the Buckhannon problem is a preliminary injunction does materially affect the legal relations of the party. You will no longer pick it in front of that hotel. And here, we don't, and whether it's right or wrong to have the judgment or whatever, I guess we're going to have to sort that out. Yeah, but in that context, I do want to emphasize, Judge Brunetti, that when we went back, we did say this is a done deal on this claim, that what we were asking for is, based on the done deal, we get injunctive relief, because that is a discretionary call, of course, something that this Court, in the underlying appeal, had preserved for the district court to decide. Does, are there further questions from the panel for me? Thank you very much. I just want to make a few very quick points. Counsel just said an injunction is discretionary, so is a declaratory judgment. This Court case never proceeded to the point where that was decided. Functional equivalence is not enough. The functional equivalent to a declaratory judgment does not entitle under prevailing party fees. That's what Buckhannon says. Hewitt says that what this Court said in Poland and Benton. I also just want to mention the Biodiversity Conservation Alliance case from the 10th Circuit, where Justice O'Connor, sitting there recently, explained the same point. The Animal Lovers case, that was decided before Buckhannon was decided. It's not clear to me what happened on remand to the district court there, but in any event, if that case stands for the proposition that a statement of law is an elf, that's inconsistent with Hewitt, and it's inconsistent with Buckhannon, and those are the Supreme Court cases that should govern here. So unless the Court has any further questions, I have nothing more. Thank you. Thank you, both counsel, for your arguments. The case just argued is submitted. That concludes today's calendar. We are adjourned. Thank you.
judges: Hug, Brunetti, Clifton